# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                        Case No.05-Cr-155

PHILLIP L. JONES,

    Defendant.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

### NATURE OF THE CASE

On June 21, 2005, defendant Phillip L. Jones was indicted by a federal grand jury sitting in the Eastern District of Wisconsin on a charge of conspiring with others to distribute and to possess with intent to distribute five kilograms or more of a mixture containing cocaine. A warrant was issued for the defendant's arrest on June 27, 2005.

On November 2, 2005, the defendant appeared before this court and entered a plea of not guilty. Subsequently, the defendant filed a motion to suppress evidence seized on November 2, 2005, with a request for an evidentiary hearing. (Docket # 27). This motion will be addressed herein.

### MOTION TO SUPPRESS EVIDENCE

On April 20, 2006, the court conducted an evidentiary hearing on the defendant's motion to suppress. At the outset, the court notes that at the commencement of the hearing, the parties agreed that there was an outstanding warrant for the defendant's arrest at the time of the search. The parties also agreed that the issue before the court was the scope of the warrantless search of a Ford F-150 truck incident to the defendant's arrest. At the hearing,

the government raised for the first time the issue of the defendant's standing to challenge the search.

Special Agents Timothy P. Gray and Jay Novak of the Wisconsin Department of Justice, Division of Criminal Investigation, Narcotics Bureau testified at the hearing on behalf of the government. Based on the evidence presented at the hearing, the court makes the following findings of fact.

## **Findings of Fact**

On June 21, 2005, a federal grand jury in this district returned a one-count indictment against the defendant, charging him with conspiracy to possess with intent to deliver controlled substances. A warrant for the defendant's arrest on the federal charge was issued on June 27, 2005.

Special Agent Timothy Gray with the Wisconsin Department of Justice, Division of Criminal Investigation, Narcotics Bureau, knew that the defendant had been indicted and that a warrant had been issued for his arrest. He had a copy of the warrant in late October 2005. Special Agent Gray continued to receive information regarding the defendant's involvement in illegal drug trafficking after the indictment was returned. He was aware that the defendant traveled to Texas to purchase marijuana and cocaine. A number of confidential informants had advised Agent Gray that the defendant received his cocaine and marijuana in Texas.

Agent Gray had cell site information regarding the defendant's cell phone. The government had received a court order to monitor cell site information for a cell phone associated with the defendant. Based on that cell site information, Agent Gray was able to determine that the cell phone had traveled to Texas and was on its way back on November 1, 2005. Based on information from confidential informants, Agent Gray was aware that the defendant would be in a Ford F-150 pickup truck.

Agent Gray had been told by confidential informants that the purpose of the trip to Texas was for the defendant to receive marijuana and cocaine. One confidential informant told Agent Gray that the defendant used the regular compartment in the Ford F-150 truck to transport the drugs. Specifically, a confidential informant, identified as Confidential Informant A, provided information about the defendant's trip to Texas in the fall of 2005. The information he provided was based on information the defendant had told him. Confidential Informant A had been arrested at the end of 2004 and had provided information to Agent Gray to better his position with law enforcement. Confidential Informant A also had provided active cooperation in the past, namely making controlled buys of controlled substances.

A confidential informant, identified as Confidential Informant B, told Agent Gray about the trip to Texas and that the defendant would be in a Ford F-150 truck. Confidential Informant B provided the information to Agent Gray within 48 hours of the arrest of the defendant. He also had assisted in investigations actively before November 2005. At the time of this conversation with Agent Gray, Confidential Informant B was not in custody, although he had been arrested by another agency and then had been released. Confidential Informant B was trying to lessen the impact of the charges he was facing by cooperating with law enforcement officials. The information he provided was based on his personal conversations with the defendant.

Another confidential informant, identified as Confidential Informant C, provided information that the defendant traveled to Texas to purchase drugs. This information was provided within 60 days of the arrest of the defendant. Confidential Informant C had been arrested by another agency, but had never been charged. He was attempting to "better" his situation by either reducing potential charges or reducing his potential sentence.

Based upon the information received from the confidential informants, the cell site information and his investigation, Special Agent Gray was in Racine County on November 1, 2005, when he observed the F-150 pickup truck. His vehicle caught up with the truck and the truck then slowed to twenty miles an hour on Interstate 94. Agent Gray drove around the truck at which time the truck exited on the 894 exit and traveled northbound on South 27th Street. Agent Gray did not see the people in the truck moving around, nor did he recognize the occupants of the truck as he drove by it on the interstate. Agent Gray continued on Interstate 94 and he advised other agents that the truck had exited the interstate. Agent Gray had no specific information that anyone had put anything in the truck in Texas.

Detectives with the Milwaukee Police Department (MPD) stopped the pickup truck on northbound Interstate 45, near the Silver Spring exit. Four people were in the vehicle: the defendant; his father, Phillip Jones, Sr.; Rita Bergeron, the defendant's aunt; and another individual. The defendant's father was driving the truck. The defendant was arrested on the federal warrant. Documents in the truck indicated that the truck had been rented by Rita Bergeron five days before and was due back at the rental agency that day.

Special Agent Jay Novak of the Wisconsin Department of Justice, Division of Criminal Investigation, pulled up behind the MPD officers who had stopped the pickup truck. By that time, all the occupants had already been removed from the truck. Agent Novak spoke to the two MPD officers who had conducted the stop. He then began to search the bed of the truck.

Agent Novak observed a black suitcase and a black duffle bag in the truck bed. He opened the black suitcase and observed articles of a man's clothing on top of packages of marijuana. Packages of marijuana were also observed in the duffle bag. Agent Novak closed the bags after he discovered the marijuana. There was a strong odor of marijuana coming from both of the bags. Approximately two to three minutes had passed from the time the

-4-

defendant was placed under arrested until the bags were opened. When the marijuana was found, the defendant was standing on the shoulder of the road with an MPD officer.

Agent Gray arrived a few minutes after the stop of the pickup truck. He advised the defendant of his rights and then spoke to the defendant and his father. At that time, MPD detectives and Special Agent Novak were searching the vehicle. By the time Agent Gray arrived on the scene, the defendant was under arrest, Special Agent Novak had located marijuana in the bags in the back of the truck and the officers were searching the passenger compartment of the vehicle.

After he searched the truck bed, Special Agent Novak searched the entire vehicle, including the cab and the underside of the vehicle. He checked the passenger side door and noticed that the upper portion of the lower section of the panel near the lock edge had a 1/8" void at the upper edge and a screw with scratches on it. He also saw a small piece of plastic sheeting that was part of the inside of the door panel.

Agent Novak used his flashlight to look inside the passenger door panel and he saw some type of a package. He then used a "leatherman tool" which had a phillips head screwdriver on it and unscrewed the screws on the passenger side door. He and Special Agent Jeff Hale took apart the passenger side door. Four individual kilos of cocaine wrapped in brown tape and located in a plastic shopping bag were found in the door compartment. The passenger side compartment was part of the manufacture of the truck; it was not an after-market installed secret compartment. The agents also searched the driver's side door.

While Agents Novak and Hale were dismantling the passenger side door, Agent Gray was talking to the defendant and his father after advising them of their constitutional rights. No search warrant was obtained for the search of the vehicle.

-5-

Case 2:05-cr-00155-LA     Filed 06/06/06     Page 5 of 11     Document 37

**ANALYSIS**

The government asserts that the defendant, as a passenger in the Ford F-150 pickup truck, lacks standing to challenge the search of the truck because he had no reasonable expectation of privacy in the vehicle. The defendant, however, maintains that he has standing to challenge the search.

"It is well established that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" United States v. Fuesting, 845 F.2d 664, 671 (7th Cir. 1988) (citing Alderman v. United States, 394 U.S. 165, 174 [1969]). A defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment "only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993). Thus, to establish standing to claim that his Fourth Amendment rights were violated, a defendant must demonstrate that he had a legitimate expectation of privacy in the premises searched or the items seized. Rakas v. Illinois, 439 U.S. 128 (1978); United States v. Torres, 32 F.3d 225, 230 (7th Cir. 1994).

"A legitimate expectation of privacy is an expectation actually and subjectively held by the defendant and one which society is prepared to recognize as reasonable." Torres, 32 F.3d at 230 (citations omitted). The burden is on the defendant objecting to the search to establish a violation of his own Fourth Amendment rights by the challenged search and seizure. Torres, 32 F.3d at 230; Fuesting, 845 F.2d at 671.

In Rakas v. Illinois, 439 U.S. 128 (1978), passengers in a car which they neither owned or leased sought to suppress evidence obtained from a search of the car. Applying substantive Fourth Amendment law, the Supreme Court held that the passengers in an automobile could not challenge the legality of the search because they "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized."

Id. at 148. Therefore, they lacked standing to challenge the search of the car in which they were riding.

The court must now determine whether the evidence establishes that the defendant had a reasonable expectation of privacy in the vehicle and the drugs seized. In United States v. Garcia, 897 F.2d 1413 (7th Cir. 1990), the court held that a driver who does not own the vehicle he is operating may challenge a search of the vehicle. However, the court made clear that the driver must present evidence establishing that he has a legitimate expectation of privacy in the area searched or the object seized. Id. In United States v. Walker, 237 F.3d 845, 849 (7th Cir. 2001), the court held that an authorized driver of a rental car had standing to challenge the search of a car. But see, United States v. Haywood, 324 F.3d 514, 516 (7th Cir. 2003) (unlicensed driver of rental car had no reasonable expectation of privacy in the car and, therefore, lacked standing to object to the officer's search of the car).

In Torres, the court held that the defendant had no expectation of privacy in a trailer being towed by the Chevrolet Blazer he was driving and, therefore, had no standing to challenge the marijuana found in the trailer. 32 F.3d at 230. In so concluding, the court noted that the vehicle and trailer were owned by the passenger and that the defendant, at the evidentiary hearing, attempted to establish that he had no connection to the trailer or the marijuana, but was merely a passenger on the trip.

In this case, the defendant has not presented any evidence, such as by affidavit or testimony, to establish that he had a legitimate expectation of privacy in the Ford F-150 or in the drugs in the vehicle and truck bed. Rather, the evidence at the suppression hearing established that four people were in the truck when it was stopped by MPD detectives: the defendant, his father, his aunt and another individual. The defendant's aunt had rented the pickup truck and the defendant's father was driving it. No evidence was presented to show

that the defendant was named on the rental agreement or that he had any proprietary or other interest in the vehicle. Therefore, since the defendant failed to establish a legitimate expectation of privacy in the truck or the drugs, the defendant lacks standing to challenge the search of the truck and the seizure of the drugs.

Even if the court were to conclude that the defendant had a legitimate expectation of privacy in the Ford F-150 pickup truck, the evidence seized is not subject to suppression. The evidence establishes that law enforcement officers arrested the defendant pursuant to a federal warrant issued on the federal indictment in this case. When a law enforcement officer has made a lawful custodial arrest of an occupant of a vehicle, he may, as a contemporaneous incident to that arrest, search the passenger compartment of the vehicle. New York v. Belton, 453 U.S. 454, 460 (1981). In Belton, the court set forth two reasons which justify the warrantless search of an automobile after the custodial arrest of one of it occupants: 1) to uncover hidden weapons to ensure the safety of the officers and other nearby persons and 2) to prevent the destruction or disappearance of evidence. Id. at 460-63; see also, United States v. Woody, 55 F.3d 1257, 1269 (7th Cir. 1995).

In Woody, the court explained:

> [A]n arrest of the occupant of a car justifies an automatic search of the car's passenger compartment, regardless of whether the officers affecting the arrest reasonably believe the arrestee to be dangerous or to be within reach of a weapon because "[a]n additional interest exists in the arrest context, i.e. preservation of evidence."

55 F.3d at 1269 (quoting Michigan v. Long, 463 U.S. 1032, 1049 n.14 [1983]). Thus, officers have a right to search a vehicle's passenger compartment, including open and closed containers within the passenger compartment, "irrespective of any privacy interest the car's occupants may have in their belongings." Woody, 55 F.3d at 1269 (Under Belton, police lawfully could search the locked glove box of a vehicle after the arrest of the driver who was

-8-

handcuffed and seated in the back seat of the patrol car at the time.); see also, Belton, 453 U.S. at 461.

In this case, the defendant was arrested on the federal warrant. Therefore, the agents lawfully could search the passenger compartment of the vehicle incident to that arrest. Belton, 455 U.S. at 461. The officers also could search any trap compartments within the passenger area. United States v. Veras, 51 F.3d 1365,1371 (7th Cir. 1995) ("[T]he secret compartment located in the back sear of [the defendant's] car was part of the 'passenger compartment' and therefore a permissible area for the officers to search.).

In addition, at the time the pickup was stopped, the agents had probable cause to believe that the defendant was transporting drugs from Texas to Milwaukee. "Under the automobile exception to the warrant requirement, a car may be searched without a warrant if there is probable cause to believe that it contains contraband or evidence and exigent circumstances are present." United States v. Matthew, 32 F.3d 294, 298 (7th Cir. 1994) (quoting United States v. McGuire, 957 F.2d 310, 314 [7th Cir. 1992]); see also, Carroll v. United States. 267 U.S. 132, 153 (1925). The inherent mobility of an automobile supplies sufficient exigency to justify use of the automobile exception to the search warrant requirement. Matthew, 32 F.3d at 296.

Here, the evidence establishes that confidential informants had advised Special Agent Gray that the defendant traveled to Texas to purchase drugs. Two informants, Confidential Informants A and B provided specific information about the defendant's November 2005 trip. One informant specified that the defendant used a Ford F-150 pickup to transport the drugs. Within the 48 hours prior to the defendant's arrest, Confidential Informant B told Agent Gray that the defendant was traveling to Texas in a Ford F-150 truck to pick up drugs. The

information the informants provided was based on their personal conversations with the defendant.

The information provided by the informants was corroborated by the cell site information on the defendant's cell phone which showed that the defendant's cell phone had traveled to Texas and was on its way back on November 1, 2005. Agent Gray's investigation into the defendant's drug trafficking provided further corroboration of the informant's statements. Thus, at the time of the stop of the Ford F-150, law enforcement officers had probable cause to believe that the vehicle contained illegal drugs.

In sum, the court concludes that the defendant has failed to establish that he had a reasonable expectation of privacy in the Ford pickup and, therefore, lacked standing to challenge the search of the vehicle. Moreover, the officers had probable cause to conclude that the truck contained illegal controlled substances and, under the automobile exception to the search warrant requirement, they could search the vehicle. Accordingly, this court will recommend that the United States district court enter an order **denying** the defendant's motion to suppress evidence.

## **CONCLUSION**

**NOW, THEREFORE, IT IS RECOMMENDED** that United States District Judge Lynn Adelman enter an order **denying** the defendant's motion to suppress evidence. (Docket #27).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.

Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 6th day of June, 2006.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge